UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE NORTHEAST CARPENTERS HEALTH, PENSION, ANNUITY, APPRENTICESHIP and LABOR MANAGEMENT COOPERATION FUNDS,

Petitioners,

-against-

M.C.F. ASSOCIATES, INC.,

Respondent.

18 CV _____

**PETITION TO CONFIRM AN ARBITRATION AWARD**

---

Petitioners, Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship and Labor Management Cooperation Funds ("Petitioners" and/or the "Funds") by and through their attorneys, Virginia & Ambinder, LLP ("V&A"), as and for their Petition to Confirm an Arbitration Award, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is an action under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3); section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to confirm and enforce an Arbitrator's Award rendered pursuant to a collective bargaining agreement between the New England Regional Council of Carpenters f/k/a the Northeast Regional Council of Carpenters ("Union") and M.C.F. Associates, Inc. ("Respondent").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA Funds (as defined below) are administered in this district.

## THE PARTIES

4. Petitioners Trustees of the Northeast Carpenters Health, Pension, Annuity and Apprenticeship Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The ERISA Funds maintain their principal place of business at 270 Motor Parkway, Hauppauge, New York 11788.

5. Petitioners Trustees of the Northeast Carpenters Labor Management Cooperation Fund (the "Labor Management Fund") are employer and employee trustees of a labor management cooperation committee established under section 302(c)(9) of the LMRA, 29 U.S.C. § 186(d)(9). The Labor Management Fund maintains its principal place of business at 270 Motor Parkway, Hauppauge, New York 11788.

6. Respondent is a corporation incorporated under the laws of the State of New York. At relevant times, Respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Respondent maintains its principal place of business at 1800 Bay Avenue, Pleasant, New Jersey 08742.

## THE ARBITRATION AWARD

7. On or around November 4, 1996, Respondent entered into an agreement with the United Brotherhood of Carpenters and Joiners of America ("UBCJA"). A copy of the UBCJA Agreement is annexed hereto as **Exhibit A**.

8. Pursuant to the UBCJA Agreement, Respondent agreed to "comply with the contractual wages, fringe benefits, hours and other working conditions established between the

UBCJA affiliates and the employers or recognized employer agencies in the localities in which the Company does any work within the jurisdiction of the UBCJA.  Payment of pension and/or health and welfare contributions for an employee's work in each locality shall be made to such funds and in such amounts as are identified in the applicable collective bargaining agreement for that locality…" *See* Ex. A.

9. The UBCJA Agreement provides that "[t]his Agreement shall [be] effective as of the below execution date and shall remain in effect for three years from that date, and it shall automatically renew itself for subsequent three-year periods unless written notice to terminate is given by either party to the other by registered or certified mail not more than 90, and not less than 60, days prior to its expiration date of the expiration date of any subsequent renewal period." *Id.*

10. Upon information and belief, neither the UBCJA nor the Respondent submitted written notice to terminate the agreement.  Accordingly, Respondent remains bound to the UBCJA Agreement.

11. In addition, on or about February 22, 2002, Respondent entered into a collective bargaining agreement with the Union covering the period May 2001 through April 2004 ("2001-04 CBA").  A copy of the 2001-04 CBA is annexed hereto as **Exhibit B**.

12. The 2001-04 CBA states in relevant part "[a]ll provisions, conditions and terms of this Agreement shall be retroactive to the 1st day of May, 2001 and shall expire on the 30th day of April, 2004.  The Agreement shall automatically be renewed from year to year thereafter, unless modified or terminated by either party giving to the other party not less than sixty (60) days nor more than one hundred and twenty (120) days written notice prior to the next termination date, of its desire to modify or terminate this Agreement.  In the event this Agreement is renewed, it shall

be deemed to contain all of the terms and conditions of the next succeeding Agreement as negotiated between the Association and the Union." *See* Ex. B, Section 28.

13. Further, as part of the collective bargaining agreement, Respondent agreed to "recognize a single-multi employer collective bargaining unit through the Association. In such case, each employer, by signing or agreeing to be bound by this Agreement thereby authorizes the Association to act as its collective bargaining representative for all matters pertaining to this Agreement and for subsequent negotiations, covering this multi-employer bargaining unit; and thereby expresses its unequivocal intent to be bound by group rather than individual action in collective bargaining, whether or not it becomes or remains a member of this Association." *See supra* Ex. C, at Recognition; *see also* Ex. B, Section 1.

14. Upon information and belief, neither Respondent nor the Union provided written notice of the desire to modify or terminate the Agreement. Accordingly, Respondent was at all relevant times bound to the collective bargaining agreement negotiated between the Union and the Association. Copies of the relevant 2011-16 and 2016-19 collective bargaining agreements (collectively, "CBAs") are annexed hereto as **Exhibit C** and **Exhibit D**, respectively.

15. The CBAs require Respondent, *inter alia*, to make contributions to the Funds for all Project Work performed on the Project. *See* Ex. B, Art. Sixteen § (a); Ex. C, Art. Sixteen § (a).

16. The CBAs further provide, *inter alia*, that "[t]he Employer shall be bound by and shall comply with the agreements, declarations of trust, plans and/or regulations of the fringe benefit funds, and the labor management cooperation committees, so designated." *Id.*

17. The Trustees of the Funds established a Joint Policy for the Collection of Delinquent Contributions ("Collection Policy"). A copy of the Collection Policy is annexed hereto as **Exhibit E**.

18. The Collection Policy requires an employer to submit to a payroll audit upon request by the Funds. It further provides that, "the Board of Trustees or Fund Director shall have the discretion in determining which employers will be audited in each year." Ex. E, Article 4.1.

19. Pursuant to the Collection Policy, interest on delinquent contributions is to be calculated at the rate of 0.75% per month. Ex. E, Art. 2.1.D.

20. The Collection Policy provides that, "[l]iquidated damages shall be calculated from the Due Date, and shall become due and owing if suit is commenced and/or arbitration is demanded. The amount of the liquidated damages shall be 20% of the delinquent Contributions." Ex. E, Art. 6.1.

21. Pursuant to the Collection Policy, Petitioners conducted an audit of Respondent covering the period January 1, 2013 through September 30, 2017 in order to determine whether Respondent had complied with its obligations under the CBAs.

22. The auditor determined Respondent failed to remit contributions in the amount of $68,087.99.

23. The Collection Policy provides that, in the event an employer fails to remit contributions to the Funds, the matter shall be sent to arbitration before the Funds' designated arbitrator. Ex. E, Art. 2.3.

24. The Collection Policy further provides that the employer shall be liable for all costs incurred in collecting delinquent contributions, including without limitation, audit costs and arbitration fees. Ex. E, Art. 6.3.

25. Pursuant to the Collection Policy, Petitioners initiated arbitration before the designated arbitrator, J.J. Pierson. Petitioners noticed said arbitration by mailing a Notice of Intent

to Arbitrate Delinquency to Respondent by Certified Mail. A copy of the Notice of Intent to Arbitrate Delinquency is annexed hereto as **Exhibit F**.

26. Thereafter, the arbitrator held a hearing and rendered his award, in writing, dated August 7, 2018, determining said dispute (the "Award"). A copy of the Award was delivered to Respondent. A copy of the Award is annexed hereto as **Exhibit G**.

27. The arbitrator found that Respondent was in violation of the terms of the CBA and ordered Respondent to pay the Funds the sum of $109,857.99, consisting of a deficiency of $68,087.99, interest of $20,603.95, liquidated damages of $13,617.99, audit costs of $5,848.45, attorneys' fees of $900, and the arbitrator's fee of $800 pursuant to the CBA. *See* Ex. G.

28. Respondent has failed to abide by the Award.

29. The Award has not been vacated or modified and no application for such relief is currently pending.

30. This petition is timely, as it was filed within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award.

31. Petitioners are entitled to the reasonable attorneys' fees and costs expended in this matter pursuant to the Award and Section 502(g) of ERISA, 29 U.S.C. § 1132(g). *See also* Ex. E, Art. 6.2.

32. Copies of V&A's contemporaneous time records, reflecting all time spent and all activities performed in the prosecution of this matter by its attorneys and staff, are annexed hereto as **Exhibit H**.

33. I, Nicole Marimon ("NM" in the accompanying billing records), am a 2014 graduate of Fordham University School of Law, and an associate at V&A. Since graduating law

6

school and being admitted to the New York State bar, I have handled the prosecution of numerous ERISA collections actions. V&A billed my time at a rate of $225 per hour.

34. V&A billed the legal assistants' time at a rate of $100 per hour for work performed in connection with this action.

35. In my experience, the foregoing hourly rates are similar to or lower than the rates typically charged by attorneys of commensurate skill and experience in similar actions in the Southern and Eastern Districts of New York.

36. V&A's total billings in this matter amount to $540 reflecting 2.4 hours of work. *See* Ex. H.

37. In addition, V&A will also advance $475 in court filing fees and service fees upon the filing of the instant petition.

38. Accordingly, Petitioners are entitled to recover $1015 in attorneys' fees and costs incurred in connection with this matter.

**WHEREFORE,** Petitioners respectfully request that this Court:

1. Confirm the Award in all respects;
2. Award judgment in favor of Petitioners and against Respondent in the amount of $109,857.99 pursuant to the Award plus interest from the date of the Award through the date of judgment;
3. Award judgment in favor of the Petitioners and against Respondent in the amount of $1015 in attorneys' fees and costs arising out of this petition; and
4. Award Petitioners such other and further relief as is just and proper.

| | |
|---|---|
| Dated: New York, New York<br>October 26, 2018 | Respectfully submitted,<br><br>**VIRGINIA & AMBINDER, LLP**<br><br>By: \_\_\_/s/_____<br>Nicole Marimon<br>Charles Virginia<br>40 Broad Street, 7th Floor<br>New York, New York 10004<br>Telephone: (212) 943-9080<br>Fax: (212) 943-9082<br>*Attorneys for Petitioners* |